IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEVIN DARNELL JONES,                )
                                    )
    Plaintiff,                     )
                                    )
v.                                  )          CIVIL ACTION FILE NO.
                                    )          1:15-CV-0297-WBH
MAJOR KIRT BEASLEY, et al.          )
                                    )
    Defendants.                    )
_____ )

## AFFIDAVIT OF KIRT BEASLEY

Appeared before me, Kirt Beasley, and after first being duly sworn, declared as follows:

1.

I am over twenty-one (21) years of age.  The statements contained herein are based on my personal knowledge and upon the court documents submitted in support of the motion for summary judgment.

2.

I have personally reviewed the allegations in the Plaintiff's Complaint.

3.

I am the Assistant Chief Jailer for the Fulton County Jail, and I hold the rank of Lieutenant Colonel.

1

4.

In 2014, at the time of the incidents complained of in Plaintiff's Complaint, I held the rank of Major, and I supervised Jail Administration at the Fulton County Jail.  In that position, I oversaw the following areas: Booking, Intake, Fingerprinting, Classifications, Property, Jail Records, and Release.

5.

The Fulton County Sheriff's Office maintains a Jail Division Standard Operating Policies and Procedures Manual, and sections 2000 and 2600 of that manual contain all of the policies and procedures concerning inmate release from the Fulton County Jail.

6.

I am intimately familiar with the Fulton County Jail release policies and procedures ("Jail P&P") by virtue of my previous role and my current role as Assistant Chief Jailer.

7.

Pursuant to Jail P&P No. 2000-01, attached hereto as Exhibit "A," an inmate cannot be released from the Fulton County Jail until jail personnel receive a written order from a judge.  See Jail P&P No. 2000-0, pp. 20-26.  A judge ordering an

2

inmate's release from the Fulton County Jail from the bench, without reducing his or her order to writing, is not sufficient.

8.

Further, pursuant to Jail P&P No. 2600-03, attached hereto as Exhibit "B," an inmate cannot be released from the Fulton County Jail if he has a detainer (or "hold") from another agency, such as the Georgia Department of Corrections, until that agency is notified.  If the agency advises jail personnel that it wants the inmate to continue to remain held in custody pursuant to the detainer, then the inmate cannot be released.

9.

In this case, Plaintiff should not have been released to the sober living facility since he was sentenced by Judge Lovett to thirteen (13) months in prison.

10.

Additionally, Plaintiff was properly held until March 11, 2014 following his March 3, 2014 hearing before Judge Russell because though she may have ordered from the bench that he be released, she did not file a written release order with the Clerk until March 11, 2014.   Upon her doing so, Plaintiff was immediately released from the Fulton County Jail.

**FURTHER AFFIANT SAYETH NOT.**

3

Executed in Fulton County, Georgia, this 11th day of August, 2017.

_____
Kirt Beasley

SWORN to and subscribed
before me this ___11th___ day
of August, 2017.

_____
Notary Public

My Commission Expires: May 20th, 2018

4

# EXHIBIT A

 **Fulton County Sheriff's Department**
Jail Bureau Policies and Procedures

| Effective Date: April 24, 2002 | Number: 2000-01 | Pages: 26 |
|---|---|---|
| Chapter: Reception and Orientation<br>Subject: Admissions | Distribution:<br>All Jail Bureau Personnel | |
| References: ACA 3-ALDF-4A-01, 4A-02, 4A-02-1, 4A-03,<br>See Sec. IV. | Amends/Rescinds: | |
| Approving Authority Signature: _JHBarrd_ | Review: February 12, 2002 | |

## I.  Purpose

To describe the procedures and orientation program that will be used to admit offenders to the Jail Bureau.

## II. Policy

The following will govern the admission and orientation of new inmate admissions and will be reviewed annually and updated if necessary:

A.  Written policies and procedures will be established to govern the admission and orientation of new inmates.

B.  Procedures for admitting new inmates into the facility will, at a minimum, address the following subjects:

1.  Determination that the inmate is legally committed to the facility

2.  Drug/alcohol use

3.  A thorough search of the individual and possessions

4.  Disposition of personal property

5.  Shower and hair care, if necessary

6.  Issue of clean, laundered clothing

7.  Photographing and fingerprinting, including notation of identifying marks or other unusual physical characteristics.

8.  Medical, dental, and mental health screening

9. Assignment to a housing unit

10. Recording basic personal data and information to be used for mail and visiting list

11. Explanation of mail and visiting procedures

12. Assistance to inmates in notifying their next of kin and families of admissions

13. Suicide screening

14. Assignment of registered number of inmate

15. Giving written orientation material to the inmate

16. Telephone calls by inmate

17. Criminal History Check

C. All newly admitted inmates will receive a written or oral orientation. *For further detail information refer to FCJB SOP # 2000-02*

## II. Scope

This policy shall apply to all Jail Bureau personnel.

## III. Reference

*Georgia Model Jail Standards*
*Fulton County Sheriff's Department Standard Operations Procedures*

## IV. Forms

*Commitment Form*
*Detainee Property Inventory and Transfer Form*

## V. General Information

A. The following personnel assigned within Intake/Booking area will be responsible for the processing and admission of all individuals entering the Fulton County Jail Bureau System:

1. Initial Intake Deputy/Detention Officer

2. Intake/Booking Records and Document Specialist

3.  Property Room Deputy/Detention Officer

4.  Identification Deputy/Detention Officer

5.  Intake medical staff

6.  Classification Personnel

7.  Movement/Transport Deputy/Detention Officer

8.  Intake/Booking Supervisor

## V.  Procedure

### A.  Initial Arrest

1.  Arrest of a suspect by an officer

2.  Inmate is transported to the Intake/Receiving Sallyport.

## VI.  Sallyport Control Center

A.  Initial Intake Procedures: (Deputies/Detention Officers)

1.  At a minimum, one male and one female deputy/detention officer will be assigned to the Intake/Sallyport Control Center and will accomplish the following tasks upon receiving an individual for Intake/Booking:

   a.  Maintain radio contact with the Center Control/Security Office

   b.  Maintain operation of the safety vestibule doors, and ensure that are secured at all times.

   c.  Verify all officers' identity prior to allowing access to the facility. (Check identification if not in uniform.) Deputies/Detention Officers shall ensure all inmates entering the facility through the Sallyport are properly secured

   d.  Ensure the flow of arresting officers in the safety vestibule is controlled. Deputies/Detention Officers shall inform officers of locations within the intake processing center and the operating procedures.

   e.  Ensure that no person enters the vestibule with a weapon, including mace or baton, ammunition or speed loaders. Ensure officers secure weapons before entering the facility.

f. Electronically scan and perform an initial pat search of each individual in the safety vestibule. Once inside the secure facility a thorough pat search will be conducted, to include his/her personal possessions in accordance with the provisions of Georgia State Statue..

g. An immediate strip search will be conducted when:

   (1) The arresting officer informs the deputy that they believe the individual may have drugs or a weapon concealed on their person.

h. In all other cases a strip search will be conducted by a deputy/detention officer of the same sex prior to the inmate being transferred from the booking area to intake housing. This search will be completed at the time the individual changes from civilian clothing into a jail uniform.

i. Visually observe the inmate for any injuries or medical problems (cuts, bleeding, bruises, broken bones, etc.). An unconscious person or a person who appears to be seriously injured will not be accepted for admittance unless they have been medically cleared by a physician..

j. If an inmate is refused acceptance in the safety vestibule by the medical staff or the booking supervisor because of unconsciousness or injuries that require medical treatment, the individual making the determination to refuse admission will document this action on a Incident Report.

k. Observe the inmate's emotional state and question the transporting officer about any unusual behavior (e.g. suicidal tendencies).

l. Initial Intake personnel will notify the medical staff, the Classification Unit, and the booking supervisor of any medical or behavioral problems.

m. Should an arresting or transporting officer bring an individual into the safety vestibule for booking with a blood content reading of .35% or higher, which has been determined after two testing by Cental Breath Testing, the officer must take the individual to the hospital for evaluation and have proper hospital documents before presenting the individual for booking.

n. When an inmate is brought into the safety vestibule for booking with a blood alcohol content reading of .30% to .34%, the booking supervisor will be notified, and a nurse contacted to evaluate the individual for acceptance or refusal.

(1). In situations when an individual refuses to submit to the required chemical testing for blood alcohol content, the booking supervisor will be notified and shall explain to the individual that an alcohol content reading is necessary in order to be admitted into the facility without hospital clearance. The individual shall be assured that his refusal will be honored and that only one test will be administrated with the results being used for administrative purposes only. It shall be further explained that in order to have legal validity, two tests must be administered.

(2). In the event the individual continues to refuse, the professional opinion of the medical nurse will dictate if there is a need for a hospital evaluation to determine if the arrested subject is medically cleared and acceptable for booking.

o. Complete an initial review of the arresting document to ensure completeness.

r. When confiscating shoes, issue the inmate a pair of shower shoes maintained in the intake property room.

s. When person property cannot be removed from an inmate, complete a Release of Property/Liability Form and place it in the plastic bag prior to sealing it.

t. Place all personal property and money in a plastic bag (including belts, male or female high heel shoes, and any other shoes or boots that may be used as a weapon) with a label affixed with the inmate's name. Inmates will be permitted to retain medical alert bracelets or necklaces and religious medallions if they sign a Release of Property/Liability Form. Shoestrings, hats, bandannas and panty hose will be removed from inmates displaying behavioral problems.

u. Separate all currency from personal property. Place all personal property in a plastic bag and seal it. Count all money and list it on a money denomination form. Also, record the inmate's name, race, sex and date of birth on this form. The intake deputy and the inmate will sign the denomination form acknowledging its accuracy. All property and money will be sealed and placed into the secure property cabinet. Items too large for the secure property cabinet shall be placed in an unoccupied holding cell with the door locked.

v. Prepare a temporary wristband with the inmate's name, race, sex, and date of birth. Color code it and place the wristband on the inmate as follows:

(1). Adult - all misdemeanor charges except weekenders - blue wristband

*Effective April 24, 2003*

(2). Adult - all felony charges except weekenders - red wristband

(3). Adult - weekenders - gold wristband

u. The temporary wristband will remain on the inmate throughout the time he is in the admission process. A permanent photo wristband will be placed on the inmate when assigned to permanent housing, the photo wristbands shall be changed as necessary to conform to the inmate's classification status as outlined FCJB SOP # 2100-01.

v. The trash bins adjacent to the intake station will not be emptied by a trusty until the contents have been scanned by the Intake Deputy/Detention Officer to ensure inmate property has not inadvertently been placed in the container.

w. The intake station will be video taped by security on a continuous basis. The security supervisor will be ensure this is accomplished.

x. Ensure that all trusties entering the intake/booking area strip searched.

y. Inmates will be separated from the general population during the admissions process.

## VII.   INTAKE/RECEIVING PROCESS

### A. INTAKE MEDICAL STAFF

1. The Intake/Processing Nurse shall review all medical emergencies/problems prior to the acceptance of a inmate.

2. If the nurse rejects a prisoner for medical purposes, the arresting or transporting officer shall be required to transport the inmate to the closest hospital.

3. Summons inmates from the waiting area one at a time and inquire into the following:

   a. Current illness and health problems, including venereal and other infectious disease.

   b. Dental problems.

   c. Mental Health problems.

   d. Use of alcohol and other drugs, which include types of drugs used, mode of use, amounts used, frequency or use, date or time of last use and history of problems which may have occurred after ceasing use (e, g., convulsions).

    e. Past and present treatment or hospitalization for mental disturbance or suicide tendencies.

    f. Possibility of pregnancy.

    e. Other health problems designated by the facility physician.

4. The Intake medical staff will observe each inmate for:

    a. Behavior which includes state of consciousness, mental state, appearance, conduct, tremors and sweating.

    b. Body deformities, case of movement, etc.

    c. Obvious condition of skin, including trauma markings, bruises, lesions, jaundice, rashes, and infestations, and needle marks or other evidence of substance abuse.

5. Each inmate will be screened to determine if he or she has medical insurance or benefits from another source (e. g., Veteran's Administration, Medicaid, Medicare, private medical insurance).

6. The Intake medical staff will retain the original Medical Screening form for inclusion in the inmate's medical file and will give one copy to the Classification Section.

7. Testing for infectious diseases will be conducted during the history and physical which will be accomplished within 14 days of admissions.

## B. BOOKING CLERK/RECORDS AND DOCUMENT SPECIALIST (PAPERWORK/WARRANTS)

(The Records and Document Specialist will perform the following):

1. Inspection of Arresting Documents - The officer's documents must be accurate and in order prior to releasing the arresting officer. Officers with incomplete documents shall be directed to the reporting room to complete them and then return them to the booking clerk. Booking clerks are not to delay bookings while officers make corrections. Any procedural questions concerning the admission of a person to the Jail Bureau must be clearly resolved prior to their admission. Assistance should be given practical. Check the following for completeness and accuracy.

    a. Inmate's full name
    b. Address
    c. Date of birth
    d. Physical description

e. Social Security Number
f. Place of birth
g. Location, date and time of offense
h. Location, date and time of arrest
i. Capias number(s) and operator number of person who verified the capias.
j. Charge(s) and Georgia Statute or local ordinance number(s)
k. Agency report number (if probable cause for arrest)
l. Arresting officer's signature, agency, and unit

2. Notarization - If the document has not been notarized, request a deputy/detention officer to do so.

3. Arresting or Transporting Officer's Documents - If complete, the officer may depart. Deputies/Detention Officers shall check all paperwork/warrants for validity prior to acceptance of any inmate.

4. Instruction For Booking Refusals.

    a. If at anytime during the booking process an inmate refuses to cooperate (e.g., the identification process, etc.), he or she will not be forced to do so.

    b. If any individual is not violent, he/she will be placed in a holding cell and asked every 30 minutes to complete the booking process until it is accomplished. If the inmate is placed in a signal cell, establish a 15 - minute special watch.

    c. If the inmate refuses and becomes violent, he shall be put into restraints and placed in a holding cell utilizing the same procedure prescribed in paragraph b. above.

    d. An Incident Report will be initiated, and each time the person is checked for consent to be booked and refuses, it will be documented in the report. The inmate's physical and medical conditions during these checks will also be included in the report.

    e. If after a lapse of six hours the inmate continues to refuse to cooperate in the booking process, he or she will be changed into a jail uniform and relocated to administrative segregation housing. While in administrative segregation, the inmate will have all privileges restricted, the 15 minutes special watch will continue, and the inmate will be asked every 30 minutes to complete the booking process. Continued refusal will be related to a facility commander.

    f. When the inmate consents to the booking, an Incident Report Supplement will be completed indicating the time consent was given and booking completed.

g. The completed Incident Report and 15 minute Special Watch form, if applicable, will be placed in the inmate's folder.

5. Time stamp the affidavit.

6. Enter the inmate's name and information into the computer using establishing guidelines to obtain a booking number.

7. Enter the booking number on the affidavit.

8. If an inmate has received hospital treatment, ensure that the arresting officer has a Hospital Release form a other necessary documents to be forwarded to the medical staff.

9. Inmates brought to the facility by contact transportation services will not be accepted without a receipt. Receipts will be placed in the appropriate receptacle for the Warrants Unit. A copy will be placed in the inmate's folder.

10. "Green Dots" will be processed as follows:

   a. Green dots will be placed on file folders to expedite the booking of new inmates being released in pre-trial status.

   b. The type of release and initials of persons making notations must be recorded on the green dot.

   c. "Green Dotted" individuals will be booked prior to all other inmates.

11. Process miscellaneous documents (e.g., order of arrest, disposition cards, and writs) as follows:

   a. Time stamp all documents on the back and print the booking number on the front.

   b. Print the arresting officer's name and identification number and location of the arrest on the front.

12. Enter the personal information from the inmate into the computer using established computer guidelines.

13. Conduct a computer inquiry for active warrants using the computer system and follow current established guidelines to conduct warrant inquiries within Fulton County.

14. Transmit by teletype, pertinent information on all violation of probation charges and all warrants/capias checks in **NCIC** and **GCIC** which indicate possible violation of probation.

15. Transmit teletypes to verify charges of other jurisdictions within the state, advising of holds placed, and that the inmate is in custody. If the subject has no local charges, advise the other jurisdiction to pick up the subject as soon as possible.

16. Conduct an inquiry as to the existence of a domestic violence injunction.

17. Log and number each outgoing teletype message in the Outgoing Administrative Log.

18. Log all incoming messages in the Incoming Administrative Message Log and forward them to the Records Section.

19. Enter the arrest data and charge data into the computer system using established computer guidelines.

20. Refer to separate operating procedures for processing the following:

    a. Admissions (Records and Document Specialist - Jail Bureau)

    b. Criminal Report Affidavits

    c. Recommitments

    d. Injunctions

    e. Remote Booking

    f. Weekenders

    e. Protective Custody

## C. PROPERTY ROOM PROCEDURES

**Definitions:**

**1. Valuable Property:**

Example: Jewelry, precious stones/metals.

### 2. Bulk Property:

Large quantity of items (clothes)

### Inventory of personal property:

1. Arresting/transporting officer shall completely inventory the inmate's property and fill out the Property Inventory Sheet.

2. Deputies/Detention Officers shall search and verify all Valuable and Bulk (i.e. suitcase) Property taken from the inmate and sign the Valuable Property Inventory Sheet verifying the listed property is accurate.

3. Deputies/Detention Officers shall explain the items listed on the Valuable Property Inventory Sheet in the presence of the inmate.

4. Deputies/Detention Officers will have the inmate sign and thumbprint the Valuable Property Inventory Sheet.

5. A copy of the Valuable Property Inventory Sheet is attached to the Booking Paperwork.

6. All property listed and the original Valuable Property Inventory Sheet is placed inside the inmate's Secur Pak/Property Bag and permanently sealed.

7. Enter all personal property items into the computer system utilizing task "Intake, Property, and Booking Number.

8. Assign a property control number and attach the number tag to the Secur Pak/Property Bag.

9. All money will be entered into computer during the personal property inventory, then routed to the accounting clerk.

10. Print the signed Property Inventory form from the computer, sign in the appropriate space and instruct the inmate to place his/her signature in the space provided.

11. Place the Property Inventory form inside the clear plastic portion of the Secur Pak/Property Bag. Ensure that the Property Inventory Form is inserted in a manner to allow the inmate's name to be visible.

4. **Inventory of Personal Clothing:**

   a. Instruct the inmate to remove all personal clothing and place it on the counter.

   b. Conduct an inventory of all personal clothing items on a Property Inventory Form.

   c. Issuance of inmate's uniform. *for further detail information refer to FCJB SOP # 2000-02*

   d. Place all items or excess items that will not fit in the garment bag.

   e. Assign a property control number and place the garment bag on the appropriate space on the property storage rack.

   f. All Valuable Property is transported to the Property Room to be stored in a safe until the inmate's release.

   g. Bulk Property is searched, removing any items considered valuable and then placed into a brown paper bag with inmate's Booking Number (BN). *(For further detail information refer to FCJB SOP # 2000-01 and FCSD SOP # 2000-02.)*

   h. All Bulk Property is retrieved by the Booking/Intake Property Room Deputy/Detention Officer periodically throughout each shift.

   i. Bulk property items or excess items that will not fit in garment bag will be searched, inventoried and documented on the Property Inventory Form.

   j. Bulk and excess property items will be issued the same property control number on the garment bag.

   k. Bulk property items will be stored in designated racks and excess property items will be stored on the selves so designated.

D. **INMATE ACCOUNT PERSONNEL**

   1. Account personnel shall count and verify all American currency.

   2. Account personnel shall issue a receipt for all cash received, and place the money into the inmate's Trust Fund Account.

   3. Account personnel will have the inmate sign the receipt.

   4. A copy of the receipt will be attached to the Booking Paperwork.

## E. TIBURON / BANNER SYSTEM

1. Once the paperwork has been verified, the Receiving Deputy/Detention Officer shall enter all of the inmate's information into the Tiburon /Banner System and obtain the inmate's Jail Identification and Booking Number. This record creates the permanent receiving record for each inmate.

2. The Jail Booking Number shall be written in red marker across the inmate's Valuable Property Inventory Sheet or the AFIS Return Sheet. This number is easily read and thus makes keeping the inmates in order easier. *For further detail information refer to FCJB SOP # 0500-01, 0600-01, and 0600-02.*

## F. PAT SEARCH

1. All inmates shall be throughly searched for weapons, property, and/or contraband.

2. Any illegal items or substances found during the search may result in additional charges being filed.

3. *For further detailed information refer to FCJB SOP # 1500-09, 2000-02, FCSD SOP # 6.04*

## IV. AUTOMATIC FINGERPRINT IDENTIFICATION SYSTEM (AFIS)

A. Upon receipt of the appropriate fingerprint form, fingerprint the inmate the appropriate finger print card.

B. Obtain a visual identification of the inmate in accordance with current procedures.

C. Deputies/Detention Officers/Records and Documentation Specialist shall identify and photograph every inmate prior to the Booking Process in the order received in order to:

1. Verify the inmate's identity.

2. Verify prior incarceration in Fulton County.

D. The Fulton County Sheriff's Department Criminal Justice Information System (CJIS) [commonly referred to as Tiburon/Banner] (electronic form of written arrest report) cannot be completed without an AFIS Number when filing charges on a inmate in custody. AFIS is not required if the inmate is at the hospital or not in custody.

E. After being identified direct the inmate to the waiting area to await further instructions.

F. Add-On Charges:

1. An Add-On Charge Control log will be maintained in the identification area, and will be kept up to date at all times.

2. It will be the responsibility of the identification deputies/detention officers/ Records and Documentation Specialist to route the arrest report, identification forms, and fingerprint cards to the Identification Section.

## V. FILING CHARGES

A. The Records and Document Clerk completes data entry to CJIS/Tiburon.

B. The Records and Document Clerk electronically sends the charge to the DA's Office/Compliant Room. (1/2 Hour).

1. DA's Office/Compliant Room reviews the case and either accepts or rejects the case based on the information. (1/2 Hours)

a. If accepted, it is printed and a Case File is created along with any supporting documents. (CJIS will read whether the DA's Office/Compliant Room has accepted the charges.)

b. Case File is forwarded to the DA's Office/Compliant Room has accepted the charges.)

c. If rejected, the DA's Office/Compliant Room must be contacted to ascertain why the charges were rejected. Contact with the arresting officer will be made any necessary corrections made and CJIS/Tiburon will be resent. If charges are altogether rejected, the arresting officer shall be contacted and the inmate released if necessary.

2. The DA's Clerk (Compliant Room) assigns the court, case number and bond amount. (3-6 Hours) (The Sent Column will read " * " at this stage, which indicates charge is complete, bond amount, court and case number have been assigned.)

3. At any time after the charges are complete, the inmate may post bond.

## VI. MEDICAL SCREENING AND X-RAY

A. The nurse will screen inmates in accordance with the Foster v. FCSD / Sheriff J. Barrett, National Commission on Correctional Health Care (NCCHC), and the American Correctional Association (ACA), guidelines for mental and mental health screening.

B. The nurse shall enter all related information in the computer.

C. The nurse will evaluate whether the inmate's medical conditions are severe and require immediate medical attention. If so, the inmate is taken to the third floor medical unit if the inmate is male. If the inmate is female, she to Female Classification by the Female Booking Deputy/Detention Officer.

D. The X-ray Technician is responsible for giving a inmate a chest x-ray to check for TB in order to prevent the spread of this infectious disease. Any other x-rays will be done on the third floor Medical Unit.

## V. PRE-TRIAL SERVICES

A. Pre-trial Services reviews the paperwork to determine if the inmate needs to be interviewed to determine eligibility for release under the Pre-trial Bond guidelines.

B. Once the Pre-trial paperwork is complete, it is sent to the Probable Cause Court/First Appearance Hearing for approval or denial.

## VI. FIRST APPEARANCE COURT/HEARING PROCEDURES

### A. Courtroom Security

1. "First Appearance" hearings and "Preliminary" hearings are presently are presently held in the Jail Bureau Courtrooms. A minimum of two (2) deputies/detention offices will be assigned as Courtroom Security deputies for preliminary hearings. If hearings are being held separately for misdemeanors and felonies a minimum of three (3) deputies will be assigned. One deputy will be assigned to each courtroom. A minimum of two deputies will be assigned to escort inmates and maintain security to and from conference rooms.

2. The Courtroom Security Deputy will obtain a court calender (list) from the records room and ensure that all inmates have been to the appropriate holding cell in the Admissions/Booking and Intake Area. The Court Calender (list) should indicate those detainees that have already bonded out.

3. For "First Appearance" Hearings the Admissions/Intake Deputy/Detention Officer will distribute to each inmate an "Application for Appointment of Counsel" and an "Affidavit of Financial Resources" if required for the court session. Once forms are completed the deputy/detention officer will collect the forms and turn them in to the Judge.

   1. Courtroom Security Deputies/Detention Officers will give Spanish speaking detainees the appropriate forms available in Spanish language. Spanish speaking detainees will also view a film explaining their rights in Spanish.

2. The Courtroom Security deputy/detention officers will notify the Court of other non-English speaking detainees so that appropriate arrangements can be made utilizing "Language Line" or other translation method. For further detailed information refer to FCSD SOP# 6.02 and 6.02a (Court Security).

## A. Felony and Misdemeanor (Probable Cause Court/First Appearance Hearing)

1. Magistrate Appearance Lists - inform the PPC/FAH Deputy/Detention Officer as to who has been booked and requires a Probable Cause/First Appearance Hearing.

2. The PPC/FAH Deputy/Detention Officer prepares the Docket/Court Calendar (List) with names of inmates requiring a Probable Cause/First Appearance Hearings.

3. The PCC/FAH Deputy/Detention Officer gives copies of the Docket/Court Calender to Pre-trial and PCC/FAH Clerks.

4. Using the Docket/Court Calender, the PCC/FAH Deputy/Detention Officer shall locate the inmate for court and ensure they are present.

5. The PCC/FAH Deputy/Detention Officer shall inform the PCC/FAH Clerk which inmates will be present for court.

6. The PCC/FAH Deputy/Detention Officer shall sign Probable Cause Forms and return to the PCC/FAH Clerk for Judge's signature.

7. The PCC/FAH Deputy/Detention Officer shall place inmates in order as listed on the docket/court calendar and escort inmates to Probable Cause/First Appearance Hearing Court from the PC/FAH Court holding cell.

8. Once the Probable Cause/First Appearance Hearing is complete, the PCC/FAH Deputy/Detention Officer ensures the inmates are returned to their proper locations.

9. After Probable Cause Court/First Appearance Hearing the Deputy/Detention Officer returns to his/her work station and shall note the number of inmates in Probable Cause Court/First Appearance Hearing on the Watch Statistics Form.

10. The Probable Cause Court/First Appearance Hearing Deputy/Detention Officer shall gather the Probable Cause/First Appearance Forms (copies) and send them to the Records Room.

**BOOKING PROCESS**

## I.   BOOKING/INTAKE PROCESS

A. Deputies/Detention Officers/Records and Document Specialists shall ask inmates a series of questions to update the inmate's jail records. For example:

1. Name.
2. Address and telephone number.
3. Name of family member or friend to notify in an emergency.
4. Place of birth, etc.

B. Deputies/Detention Officers/Records and Document Specialist shall check for additional warrants. If any additional warrants are found:

1. Verify validity
2. Execute upon receipt
3. Initiate case(s) if necessary.
4. Book pertinent case(s) in the computer.

C. Deputies/Detention Officers/Records and Document Specialist shall print a jail card and attach all applicable Booking Paperwork.

D. Inmates found to be an illegal alien, an INS Hold is placed on his/her Booking number in the computer and INS issues a Detainer. *For further detailed information refer to FCJB SOP 1900-04 (Inmate Access to Diplomatic Representation.)*

E. The Jail Booking Card is given to the Fingerprint Section.

F. The inmate is placed into the Fingerprint holding cell.

## II.   FINGERPRINTS

A. The Fingerprint personnel shall compare the Sheriff's Department Number in the computer to each AFIS Return Sheet and Jail Booking Card.

B. The Fingerprint personnel shall enter the Sheriff's Department Number into the computer if necessary and correct any problems.

C. The Fingerprint personnel shall place the inmate's inked right thumbprint onto six (6) original  copy of the Jail Bureau Booking Cards.

*Effective April 24, 2003*

D. The original copy [Number One (1)] jail card is sent to the Records Room and the Number Six (6) jail card follows the inmate throughout processing to Classification where it will be placed in the inmate's file.

E. After fingerprinting, the inmate is placed in the Pre-trial holding cell and the paperwork is given to personnel in Pre-trial Services.

## III. PROPERTY ROOM (SHOWERS/DRESSOUT)

A. Property Room Deputy/Detention Officer checks each inmate's Release Status prior to showering.

B. The Property Room Deputy/Detention officer issues each inmate a clothing bag and clothing card list all clothing.

C. The inmate will verify the items listed then sign and place a right thumbprint on the Property Card

D. The inmate is directed by the Property Room Deputy/Detention Officer to remove his clothing and hang it in the clothing bag, the place the Property Card into the window of the clothing bag facing out so it can be read.

E. The Property Room Deputy/Detention Officer sends clothing bags to the main property room to be stored via the conveyor belt rack.

F. Inmates may keep only the items authorized by the Fulton County Jail Bureau. *For further detailed information refer to FCJB SOP # 2000-02 & 2100-01*

G. Inmates shall not be allowed to place athletic shoes in their clothing bags.

H. The inmate is showered and issued an blue uniform and sandals (if not already wearing athletic shoes).

I. After showers, the inmate is placed in the Medical Screening Holding cell and the paperwork given to the nurse. Any inmates deemed "medical" shall be taken to third floor medical by the Property Room Deputy/Detention Officer.

## VII. CLASSIFICATION PERSONNEL

A. Obtain the completed inmate folder from the Intake/Booking Records and Documents Specialist.

B. Separate files for the Classification Section and Records Room Section.

C. If an inmate meets the criteria for pre-trial release under the administrative order, he or she will be presented at First Appearance Hearing/Court for consideration by the assigned state attorney and the First Appearance Judge.

D. After the Criminal History sheet is determined and the Sheriff's Department Identification number is entered into the data base by the Identification Section, classification personnel will add the Sheriff's Department Identification number to the arrest report.

E. After completion of the Classification Process, classification personnel will enter the inmate's classification into the data base.

F. When completed, remove the affidavits and place the file in the appropriate section.

G. Make housing assignments as outlined in FCJB SOP # 2100-01

H. Will determine the housing status of all inmates in custody in the Jail Bureau. Inmates are classified by:

1. Offense.
2. Recidivist rate.
3. Gang Affiliation.
4. Special handling cautions.
5. Age.

I. Inmates are issued color-coded armbands that alert deputies/detention officers as to inmates' classification status. *For further detail information refer to FCJB SOP 2100-01 Classification).*

J. Housing Facilities

1. 901 Rice Street
2. Marietta Street Annex
3. Bellwood Annex

## VIII. Escort Deputy/Detention Officer -

*The escort Deputy/Detention Officer will be responsible for the following:*

A. Security and Control in the waiting room

B. Relief for other booking personnel as directed by the intake/booking supervisor.

C. Assisting with the booking process, time permitting.

*Effective April 24, 2003*

D. Ensure that inmates are transferred to housing in accordance with established procedures.

E. The inmate will be informed by the escort deputy/detention officer of the opportunity to compete local or long distance phone calls during the booking process and/or upon relocation to intake housing. The escort deputy/detention officer and the inmate will both sign the inmate information sheet, acknowledging that the inmate was afforded the opportunity to make at least (3) admission telephone calls.

F. Any other duties as directed by the Intake/Booking Supervisor.

## RELEASE PROCESS

### I. FINES AND FEES

A. Citizens pays the fine. The case(s) is computer released in the Records Room an the information is sent (electronically) to Central Control for Releasing.

B. The Inmate serves time for fine amounts.

### II. FCJB BONDING DIVISION (Central Control)

A. All bond request is at the FCJB Bonding window.

B. The information is verified by computer and the bond information is entered into the computer.

C. Records Room personnel will receive the bond/release information approximately 30 minutes after the bond is taken in Central Control bonding window.

### III. COURT RELEASES

A. The Court Clerk enters the release information into the computer and sends it to the presiding Jurisdiction Clerk's Office.

B. The Records Room receives the paperwork after the presiding jurisdiction Clerk's Office has completed their processing procedures.

### IV. PROBABLE CAUSE COURT/FIRST APPEARANCE HEARING

The Probable Cause Court/First Appearance Hearing Judge reviews the cases at a specific times depending on the charge. The following are the main functions of the Judge:


| 2000-01 | Admissions | Reception and Orientation | Page 21 of 26 |

A. Probable Cause/First Appearance Hearing (Determines Probable Cause for further detention, Bond Review, Emergency Protective Orders)

B. Pre-trial Bond (Approves or denies)

C. *(Paperwork is received in the Records Rooms approximately 1-2 hours after the inmate is seen by a Judge.)*

D. The presiding jurisdiction court shall calculate all time to be served on cases that the inmate is serving time for the fine amounts.

## V. GEORGIA STATE BOARD OF PARDONS AND PAROLE

Release notification from the State Board of Pardons and Parole are hand delivered to the Records Room by SBOPP personnel. *(May be days after SBOPP approves the release.)*

## VI. RECORDS ROOM

A. Records Room personnel initiates all releases and sends them to Central Control/Releasing. All paperwork is manually reviewed and computer verified case by case for each prisoner to determine if it is a final release or only the release of one of multiple cases. All paperwork pertaining to the prisoner is gathered and forwarded to Releasing:

   1. An Inmate Release Authorization is sent electronically/manually to Central Control/Bonding/Releasing containing the following information:

      a. Inmate's name.
      b. Booking number (and any other identifiers listed in jail bureau classification file).
      c. Housing location.
      d. Date and time the release documentation was sent and by whom.
      e. reason and Authority for Release.
      f. Holds placed for other agencies, if any.
      g. Any other pertinent comments may be listed in the comments section (such as, bond must be signed and printed).

   2. Jailcards with all applicable paperwork attached (AFIS Return Sheets, bonds, Juridical Preceding Court Releases, Teletypes, etc.) are tubed to Releasing.

   3. Inmate Release Authorization documentation is also electronically/manually sent to the Property Room in order to obtain the clothing any bulk property.

## VII. RELEASE PAPERWORK DESK/CENTRAL CONTROL

A. The personnel assigned to the Releasing Paperwork Desk shall transcribe the following requested information onto the Releasing Log.

    1. Inmate's Booking number
    2. Name
    3. Sex
    4. Housing location (jail facility and cell location)
    5. Reason for release
    6. Time the release information (slip) was sent
    7. Time the inmate was received at the Inmate Processing Center (or in Releasing)
    8. Time the inmate was ready for release
    9. Time inmate was released from custody
    10. Any pertinent information shall be noted in the Comment Section. (Hold information, Missing jail card, bond, other paperwork, Inmate at hospital, etc.)

B. Copies of the inmate release authorization information are forwarded to the appropriate sections:

    1. The Valuable Property Room Deputy/Detention Officer is given copies in order to obtain the prisoner's valuable property.

    2. The Inmate Account Clerks/Personnel are given copies in order to generate a check for any inmate having a balance in their Inmate Trust Fund Account.

    3. The Releasing Deputy/Detention Officer is given a pink document (slip) and inmate jail card in order to find the bodies to be released.

C. Central Control Releasing personnel shall be time-stamp all paperwork received from the Records Room as it arrives.

D. Central Control Releasing personnel shall assemble and staple all paperwork, property, and checks belonging to each prisoner together.

## VIII. VALUABLE PROPERTY DEPUTY

A. The Valuable Property Deputy retrieves the jailcard with attach Inmate Release Authorization Form from the Central Control Releasing Desk personnel in order to pull the inmate's property.

B. The Valuable Property Deputy must match the inmate's name and Booking Number on the Inmate Release Authorization Form to the Valuable Property Envelope to ensure the correct property is pulled.

C. The Valuable Property Deputy/Detention Officer shall pull the matching property from the shelf, staple it to the jailcard and return it to the Central Control/Releasing personnel.

## IX. INMATE BANK/ACCOUNTING

A. The Booking accounting personnel shall retrieve a copy of the inmate release authorization.

B. The accounting clerks shall check each inmate's Inmate Trust Fund Account for availability of funds.

1. If the inmate has money, the account clerk shall issue a check for amount left in amount and send the check to the Releasing Account to be stamped. The Releasing Accounts clerk shall deliver the checks to the Central Control Releasing Desk Personnel.

2. If the inmate has no money, a zero (0) is written on the copy of the Inmate Release Authorization Release Form and returned back to Central Control/Releasing.

## X. INMATE PROCESSING DEPUTY/DETENTION OFFICER

A. The Inmate Processing Center Deputy/Detention Officer shall contact the location of the inmate if the inmate has been assigned to housing location.

B. The Housing Central Control Movement Team Deputy/Detention Officer shall transport the inmate to Central Control/Release Area and turn the inmate over to the Inmate Processing Center Deputy/Detention Officer.

C. If the inmate is not yet housed, the Inmate Processing Center Deputy/Detention Officer shall locate the inmate.

D. If the Inmate is male, the Inmate Processing Center Deputy/Detention officer shall return the inmate's clothing to him and have him sign and thumbprint the Clothing Card.

E. If the inmate is female, the Property Room Deputy/Detention Officer is responsible for dressing her out prior to transporting her to the Inmate Processing Center.

F. Once the inmate is dressed, the Inmate Processing Center Deputy/Detention Officer shall place the inmate in the appropriate Releasing holding cell.

G. The Inmate Processing Center Deputy/Detention Officer shall time-stamp the copy of the Inmate Release Authorization Form at the time the inmate arrives in Releasing as well as when the inmate is dressed and ready to release. Staple the Inmate Release Authorization Form to the Clothing Card and give it to the Releasing Desk personnel so that it can be entered on the Releasing Log.

## XI. PROPERTY ROOM DEPUTY/DETENTION OFFICER

A. The Property Room Deputy/Detention Officer shall retrieve the Inmate Release Authorization from the printer, run the inmate's Booking Number in the computer to get the inmate's Locker Number, and locate the clothing.

B. The Property Rom Deputy/Detention Officer shall check the computer for any bulk property and located.

C. The Property Room Deputy/Detention Officer shall match the inmate's name and Booking Number on the Clothing Card in the clothing bag to the Inmate Release Authorization Form to ensure the correct bag as been pulled.

D. The Property Room Deputy/Detention Officer shall place the clothing bags and any bulk property on the clothing rack.

## XII. RELEASING PERSONNEL

A. Releasing personnel shall retrieve all ready paperwork from the Releasing Bin.

B. A Release Deputy/Detention Officer shall pull the inmates out of the Releasing holding cell.

C. A Releasing Deputy/Detention Officer shall verify the inmate's identity using the Right thumb verify AFIS Machine.

D. A Releasing Deputy/Detention Officer shall ink the inmate's right thumb and place the print on the jail card.

E. Releasing personnel shall ask the inmates questions and compare the answers to the information on the jail card to ensure the information in the computer has been updated and is correct. Update the information as necessary.

F. Releasing Personnel shall verify each release in the computer. This is the last checkpoint prior to setting the prisoner free.

1. Ensure all charge(s) are line-released.

2. Ensure there are no open warrants.

3. Verify the reason any holds are lifted (Release APD, INS, etc., Hold lifted per teletype, etc.).

4. Check the Court Screen for any information changing the Release status of the inmate.

5. Check for additional unacknowledged warrants, filed after the Inmate Release Authorization Form was sent.

6. Verify bond amount if being released on bond.

7. Check for any future court dates and/or any cases lacking a disposition and not on bond.

G. Verify each individual item listed on the Valuable Property Inventory Sheet against what is inside the Secur Pak prior to returning the property to the inmate. Once all property is verified, return the property to the inmate, sign the sheet, and have the inmate sign and place a right thumbprint in the square.

H. Have the inmate sign all applicable releasing paperwork.

1. Jail card

2. Bonds, if any

   a. Sign his/her name

   b. Print his/her address, city, state, Zip Code, and phone number

   c. Place the prisoner's right thumbprint on the bond and place your initials next to the print.

3. If the inmate has a check, return it to them. They will sign it at the account window.

I. Releasing Personnel shall Overall Release the prisoner in the computer.

1. Release the Valuable Property from computer.

2. Release the clothing and any bulk property from computer.

3. Enter the date, time, Release Reason, Release Authority and Release Deputy's/Detention Officers Code on the overall release screen.

J. Releasing personnel shall stamp the jail card with the appropriate stamp(s) and complete.

1. Cleared/Released Stamp

    a. releasing Deputy's/Detention Officer's last name, printed

    b. Date of release

    c. Time of release

    d. Computer down information, if applicable

    e. Overall release, if computers were down at the time inmate's release.

2. Release to Agency Stamp for use when transferring custody of the inmate to another agency.

    a. Date of release

    b. Phone number of the agency taking the inmate

    c. Name of the agency taking the inmate

    d. Signature of the officer taking the inmate

## XIII. RELEASE OF THE PRISONER FROM FCSD CUSTODY

Once the inmate has completed the above steps, the inmate shall either be released from custody or to another agency.

This policy shall be reviewed at least annually.

# EXHIBIT B



# Fulton County Sheriff's Department
## Jail Bureau Policies and Procedures

| Effective Date: January 1, 2002 | Number: 2600-03 | Pages: 2 |
|---|---|---|
| Chapter: Release<br>Subject: Releases (Final Release) | Distribution:<br>All Jail Bureau Personnel | |
| References: ACA: 3-ALDF-4G-07, 4G-08 | Amends/Rescinds: | |
| Approving Authority Signature: *J H Barrett* | Review: Annually | |

### I. Purpose

To establish a procedure that ensures the proper release of inmates from the Jail Bureau.

### II. Policy

The Jail Bureau shall ensure the proper procedures are followed when releasing inmates from the custody of the Fulton County Sheriff's Department.

To provide for notifying a registered victim(s) of a crime prior to any release from confinement of the accused inmate, or in the event of the escape of the accused inmate, and subsequent notification upon the escapee's return to custody, or the death of the accused inmate, and to provide for the confidentiality of the name, address and telephone number of the registered victim(s), pursuant to *Chapter 17 of Title 17, Official Code of Georgia, and Georgia Code 42-1-11 (amended).*

### III. Scope

This policy shall apply to all Jail Bureau personnel.

### IV. Reference

*Georgia Model Jail Standards 10.13*

### V. Procedure

    A.    **Release/Intake Staff:**

    Release/Intake staff will implement procedures to ensure that the release of an inmate from the Fulton County Jail Bureau is both legally and procedurally correct. Written procedures for releasing inmates at the end of their term shall include, but are not limited to, the following;

    1.    Verification of identity (i.e., name, height, weight, etc.)
    2.    Return of personal effects
    3.    Verification that no property belonging to the Jail Bureau leaves the Jail Bureau upon the inmates release

| Subject: Releases | Policy No. 2600-03. | Page 2 of 3 |

4.     Arrangements for completion of any pending action, such as grievances or claims for damages or lost possessions

5.     Medical screening and arrangements for community follow-up as well as the remainder of prescribed medication, if needed

6.     Verification of release papers

7.     Completion of release arrangements, including notification of parole authorities or other jurisdictions if there is a hold, and or victims in the jurisdiction of release, if required

8.     Instructions on forwarding of mail

**B.**    **Release Check-off List:**

Staff (i.e., control/housing deputy/detention officer, movement deputy/detention officer, property deputy/detention officer, release deputy/detention officer, etc.) will complete the "Check-off List" located on the back of the Movement card (Number One Card) and verify they made every attempt to positively identify the inmate being released. (See Attached)

**C.**    **Victim Notification:**

Written policy, procedure and practice shall provide that consistent with the law of the jurisdiction, there shall be a system for providing notification to the registered victim(s) of a crime prior to any release from confinement of the convicted inmate and/or escape from custody. Follow-up notification to victim(s) shall occur when escapees are returned to custody.

This policy shall be reviewed at least annually.

| Subject: Releases | Policy No. 2600-03 | Page 3 of 3 |
| --- | --- | --- |

## ATTACHMENT: RELEASE CHECK OFF LIST

## RELEASE CHECK OFF LIST